# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 11-301 (JRT/LIB) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER DENYING MOTION FOR RECONSIDERATION** |
| TIMOTHY GLEN CASKEY, | |
| Defendant. | |

Michelle E. Jones, Assistant United States Attorney, **UNITED STATES ATTORNEY'S OFFICE**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415 for plaintiff.

Caroline Durham, Assistant Federal Public Defender, **OFFICE OF THE FEDERAL DEFENDER**, 300 South Fourth Street, Suite 107, Minneapolis, MN 55415 for defendant.

Timothy Glen Caskey has pled not guilty to charges of kidnapping and interstate domestic violence. Caskey moved to suppress evidence gathered from the search and seizure of his pickup truck. On July 25, 2012, this Court held that it would suppress the items seized from inside Caskey's truck because the United States had not sufficiently established the inventory search policy pursuant to which the property was allegedly seized. The United States moved for reconsideration, again arguing that the seizure of the items in the truck was proper under the inventory search exception and raising a new argument that the seizure was proper because Caskey abandoned his truck. The Court will deny the United States's motion because it has not shown that the search was proper

under the inventory search exception and because it failed to timely raise the issue of abandonment.

## I. INVENTORY SEARCH AND PLAIN VIEW EXCEPTIONS

The Court will first consider whether the United States has established that the search was conducted pursuant to the inventory search exception to the warrant requirement or, relatedly, pursuant to the plain view exception. *See United States v. Kennedy*, 427 F.3d 1136, 1144 (8th Cir. 2005) ("As with any warrantless search, the Government bears the burden of demonstrating the need for an exemption from the warrant requirement and that its conduct fell within the bounds of the exception."). The Court finds that the United States has not shown compliance with these exceptions and therefore the Court will suppress the evidence gathered from the search.

### A. Background

The Court outlined facts relevant to this motion in its previous Order but will repeat and state some additional facts here. *See United States v. Caskey*, Criminal No. 11-301, 2012 WL 3031144, at *1-4 (D. Minn. July 25, 2012). Caskey is accused of kidnapping R.L.C. The United States claims that, after Caskey kidnapped R.L.C., he brought her to Texas and then to Mexico. It further claims that, in the course of this kidnapping, Caskey abandoned his truck at a small used car dealership in Texas.

On July 16, 2011, Officer Derrick Bobo of the New Braunfels, Texas, Police Department ("NBPD") arrived at the used car dealership. (Transcript of Pretrial Motions Hearing ("Tr.") at 7-8, Feb. 13, 2012, Docket No. 45.) The car dealer requested that

Caskey's truck be towed from the property. (Tr. 11, 25.) Officer Bobo ran a check on Caskey's truck. (Tr. 12.) The truck "was flagged as being involved in a kidnapping in Minnesota." (*Id.*) After speaking with his sergeant, Officer Bobo photographed the truck and conducted a vehicle inventory search. (*Id.*)

Officer Bobo did not have a warrant for the search of the truck. (Tr. 23.) He instead asserted that his search was justified as an inventory search incident to a tow. (Tr. 25.) NBPD's inventory search policy dictated that a vehicle inventory search be performed when a vehicle truck was towed. (Tr. 12.)[1] Specifically, the inventory search policy[2] stated that all items of value must be itemized on a vehicle inventory form and that valuable items such as large amounts of cash, firearms, and jewelry must be turned over to the control of the NBPD property room for safekeeping.[3] (United States Ex. 1 at 2.) The policy also stated that contraband and evidence discovered during an inventory must be seized and deposited with the NBPD evidence/property officer in accordance with the procedures for control of criminal evidence. (*Id.* at 2, 5.)[4] Officer Bobo testified

---

[1] NBPD policy was somewhat unclear on when this inventory should occur. On the one hand, the policy stated that the legal authority to inventory existed **after** the towing of the vehicle for violations. (United States Ex. 1 at 1.) However, shortly thereafter in the same policy, it stated that the inventory should be conducted in the location from which the vehicle was seized unless limited by reasons of safety or practicality. (*Id.*)

[2] As will be discussed below, this written policy is newly submitted to the Court.

[3] Presumably, other items of value are normally to be kept in the vehicle. (*See* United States Ex. 1 at 2.)

[4] The procedures for control of criminal evidence have not been disclosed to this Court.

that he followed NBPD policy when he conducted the search and seizure of property in the truck. (Tr. 18-19.)

Officer Bobo seized a variety of items from Caskey's truck, which were then placed into evidence at the NBPD. (Tr. 15-16.) He completed two separate forms inventorying the property seized. (Tr. 16.) First, he filled out a "Towed Vehicle Itinerary" form, listing a black bag, with female clothing inside, and a black camera. (Tr. 14-15, Ex. 1.) Officer Bobo testified that he listed items on this form that he believed were of property value. (Tr. 20.) Then he filled out a "Receipt for Property" form, listing a wooden handled steak knife, two straws from Taco Bell cups, receipts, a camera, a black bag with clothes, fingerprint samples, hair samples, and the 1991 Chevrolet 1500 pickup itself. (Tr. 15-16, Ex. 5.) This form appears to be intended to list items of evidentiary value because it asks the officer to record the nature of charges and the laboratory work required.[5] Officer Bobo did not testify about where in the truck he gathered some of the items that he seized, and he also did not testify as to each area that he searched.

Officer Bobo admitted that some of the items he logged on the forms and seized were considered valuable only to the police because of their evidentiary value. (*See* Tr. 20, 26.) Specifically, he testified as follows:

---

[5] A toolbox does not appear on either the vehicle inventory or the property receipt form, although later police reports indicate that a toolbox was in Caskey's truck. (*See* Tr. 22, Exs. 1 and 5.)

| | |
|---|---|
| Q. | So when you ran the plate and you got the flag for this particular vehicle as being part of a kidnapping, you thought there might be some evidence in there that would be of interest to police, true? |
| A. | This is correct. |
| Q. | And, in fact, most of the items that you noted in the list that you made relate not to valuable property, right, it's not phones or CD's or anything like that? . . . . |
| A. | The items on the vehicle inventory sheet were the items that I felt were of property value. |
| Q. | And but you -- the significant number of items that you seized were those that might be considered valuable only to police, true? |
| A. | That's correct. |
| Q. | I mean, as you were searching that vehicle, you were searching for things that you thought the investigators might want? |
| A. | My concern was the female that was kidnapped. |
| **Q.** | **And in your concern, your focus in searching that vehicle was, in large part, to find items that police could use in their investigation, true?** |
| **A.** | **That was correct.** |
| Q. | Okay. And so your intent in entering that vehicle, in large part, was to make sure that if there was evidence there that you were able to secure it, fair to say? |
| A. | My purpose of being in the vehicle was to conduct a vehicle inventory search, but while during my vehicle inventory search, while doing that duty, I did notice things that were of evidentiary value. |

(Tr. 19-20) (emphasis added). He later testified that, although he seized items of evidentiary value, his "focus was to conduct the vehicle inventory search, but while doing an inventory search in any case, depending on what that case may be, if you notice items that are of evidentiary value in plain view, you may seize them." (Tr. 26.)

**B. New Evidence**

As a preliminary matter, the Court must decide whether to consider the written NBPD inventory search policy that the United States submitted to the Court with its motion for reconsideration. In this Court's previous Order, it stated that the United States had failed to offer this policy into evidence or to provide adequate testimony on the outlines of the policy.

The Court finds that the United States should have submitted this policy or provided more detailed testimony regarding it at the evidentiary hearing.[6] Nonetheless, in its discretion, the Court will consider this additional evidence. *See United States v. Gill*, 513 F. 3d 836, 846 (8th Cir. 2008); *United States v. Johnson*, 944 F.2d 396, 404 n.5 (8th Cir. 1991); *see also* D. Minn. L.R. 72.2(b). The Court will do so because the evidence is highly relevant and does not prejudice Caskey. Caskey had the opportunity to cross examine Officer Bobo about his search and the details of the inventory search

---

[6] The United States seems to argue that it was not required at the evidentiary hearing to define the inventory search policy or demonstrate Officer Bobo's compliance with it. Instead, the United States argues, the limited issue before the Court and raised by Caskey was whether Officer Bobo had an "investigatory purpose" or motive in conducting the search. The Court disagrees. When Caskey argued there was an improper purpose for the search, the United States had the burden to produce evidence that the search was instead conducted pursuant to established inventory search procedures or pursuant to another exemption from the warrant requirement. *See Kennedy*, 427 F.3d at 1144 ("As with any warrantless search, the Government bears the burden of demonstrating the need for an exemption from the warrant requirement and that its conduct fell within the bounds of the exception."). The United States could not meet its burden through a bald assertion that Officer Bobo complied with a largely undefined policy and thus did not have an improper purpose. Officer Bobo testified that his concern when searching the vehicle was in large part to find items that the police could use in their investigation, and he admitted that he gathered items of value only to the police. As will be further explained below, under these circumstances, the United States had the burden to prove that the gathering of evidence was conducted pursuant to a valid inventory search and not due to an investigatory purpose.

policy. In addition, Caskey received the inventory search policy and had the opportunity, through a memorandum to this Court, to respond to the policy. For these reasons, Caskey is not prejudiced by the Court considering the evidence at this stage, and the Court will consider it. *See United States v. Kithcart*, 218 F.3d 213, 219-20 (3d Cir. 2000).

C.     **Standard for Inventory Search Exception**

After considering this new evidence as well as the parties' arguments, the Court must determine if the United States has now established that Officer Bobo conducted the search in accordance with the inventory search exception. The inventory search exception "permits law enforcement to inventory the contents of a vehicle that is lawfully taken into custody, even without a warrant or probable cause to search." *United States v. Garreau*, 658 F.3d 854, 857 (8th Cir. 2011).

An inventory search must be conducted pursuant to "standard police procedures" and in accordance with the purposes of inventory searches. *United States v. Best,* 135 F.3d 1223, 1225 (8th Cir. 1998) (quoting *South Dakota v. Opperman,* 428 U.S. 364 (1976)). There are three justifications for an inventory search: (1) protection of the owner's property while in police custody; (2) protection of the police from claims of lost, stolen or damaged property; and (3) protection of the police from potential danger. *Id.* Following standardized police procedures and limiting the allowable purposes of inventory searches vitiates concerns that an inventory search is conducted for an investigatory motive or pursuant to excessive discretion. *Florida v. Wells,* 495 U.S. 1, 4-5 (1990) (holding that inventory search was unconstitutional because it was not

conducted pursuant to established procedures); *United States v. Marshall*, 986 F.2d 1171, 1174-75 (8th Cir. 1993) (same). The crucial question in evaluating an inventory search is "whether, in the totality of the circumstances, the search was reasonable." *Kennedy*, 427 F.3d at 1143. The United States bears the burden of producing evidence that impoundment and permissible inventory search procedures were in place and that law enforcement complied with those procedures. *Id.* at 1144.

"The requirement that officers follow standard procedures in conducting inventory searches does not foreclose the use of some discretion by officers so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *United States v. Hall*, 497 F.3d 846, 851 (8th Cir. 2007) (internal quotation marks omitted). An officer's discretion in conducting an inventory search must be exercised based on legitimate concerns related to the purposes of an impoundment and not for the sole purpose of investigating a crime. *Id.*

"Even when law enforcement fails to conduct a search according to standardized procedures, this does not mandate the suppression of the evidence discovered as a result of the search." *United States v. Rowland*, 341 F.3d 774, 780 (8th Cir. 2003). There must also be evidence to suggest that there was an investigatory motive to the search. *Id.* When there is such evidence of an investigatory motive,[7] combined with a lack of evidence of compliance with standard police procedures, suppression is appropriate. *Id.*

---

[7] Normally, an investigatory motive alone does not sour an inventory search. *Rowland*, 341 F.3d at 780. The Court notes, however, that the NBPD inventory search policy states that "examination of the contents of a motor vehicle pursuant to a criminal investigation or with the

(Footnote continued on next page.)

Another exception to the warrant requirement that bears on this case is the plain view exception. Police officers may gather items in plain view during the course of an inventory search. *See United States v. Petty*, 367 F.3d 1009, 1013 (8th Cir. 2004) ("[P]olice 'may keep their eyes open for potentially incriminating items that they might discover in the course of an inventory search, as long as their sole purpose is not to investigate a crime.'") (quoting *Marshall*, 986 F.2d at 1176). "Under the plain-view exception, officers may seize an object without a warrant if they are lawfully in a position from which they view the object, the incriminating character of the object is immediately apparent, and the officers have a lawful right of access to the object." *United States v. Beasley*, 688 F.3d 523, 530 (8th Cir. 2012) (internal quotation marks omitted). "The immediately apparent requirement means that officers must have probable cause to associate the property with criminal activity." *United States v. Weinbender*, 109 F.3d 1327, 1330 (8th Cir. 1997) (internal quotation marks omitted). "Probable cause demands not that an officer be sure or certain but only that the facts available to a reasonably cautious man would warrant a belief that certain items may be contraband or stolen property or useful as evidence of a crime." *Id.* (internal quotation marks omitted).

_____
(Footnote continued.)

intent of discovering evidence of a crime is a search, not an administrative inventory" and is thus subject to an entirely separate policy. (United States Ex. 1 at 1, Aug. 15, 2012, Docket No. 77; *see also id.* at 3.) It is thus possible that Officer Bobo's admission of an at least partially investigative intent might cause his search to fall outside of the NBPD inventory search policy. (*See* Tr. 20:4-15.) For the purposes of this Order, however, the Court will assume without deciding that the evidence of Officer Bobo's investigatory motive does not render the inventory search policy inapplicable.

**D. Analysis**

The Court finds that the United States has not shown that Officer Bobo's search fell under either the inventory search or plain view exceptions to the warrant requirement. First, the United States has not established that the requirements of the plain view exception are satisfied in the present case. Officer Bobo seized the majority, if not all, of the items from the vehicle because of their criminal nature, thus relying on the plain view exception and the inventory search policy's requirement that items of evidentiary value be seized.[8] Officer Bobo did not testify with specificity, however, how he was able to view each of the items he seized. *See Beasley*, 688 F.3d at 530. For example, the United States did not demonstrate that the Taco Bell cups and straws were in plain view because Officer Bobo provided no testimony about them.

Officer Bobo also did not testify regarding why the incriminating character of the items he seized was immediately apparent. While the Court could speculate as to why items such as Taco Bell cups might have had an incriminating character, the United States has not explained – much less established – why these items had an incriminating nature.[9] This problem is perhaps best evidenced by the receipts that Officer Bobo seized.

---

[8] The Court notes that the requirement in the inventory search policy that evidentiary items be seized is only valid to the extent that it relies on the plain view exception, as an inventory search policy itself may not authorize searches solely for the purpose of an investigation. *See Best*, 135 F.3d at 1225.

[9] Other than brief mentions of the plain view doctrine by Officer Bobo in his testimony, the United States has not explained in any detail why the seizure of various items in the truck was warranted by the plain view doctrine.

The record contains no details about the content of these receipts, making it unclear if they had any potentially incriminating character.[10] Furthermore, even assuming that the receipts had an incriminating character, the United States has not shown that this incriminating character was apparent without Officer Bobo moving the receipts or otherwise inspecting them in a method not allowed under the plain view doctrine.[11] In *Arizona v. Hicks*, 480 U.S. 321, 325 (1987), the Supreme Court held that an officer's actions in moving stereo equipment to locate serial numbers and determine if equipment was stolen constituted a search that went beyond the plain view doctrine, even though the equipment itself was located in plain view. Here, Officer Bobo may have likewise needed to move the receipts to identify any incriminating content, particularly because there were "several" receipts in the center console that may not have been easily visible. (*See* Tr. 15.) There are similar problems for the other pieces of evidence seized by Officer Bobo. In sum, then, the United States did not introduce sufficient evidence to

---

[10] The Eighth Circuit has stated that, in at least some instances, receipts can be seized because their incriminating nature is apparent and they are in the plain view of officers. *United States v. Khabeer*, 410 F.3d 477, 482 (8th Cir. 2005); *see also United States v. Santoyo-Torres*, 518 F.3d 620, 622 (8th Cir. 2008).

[11] Officer Bobo testified that "there were several receipts in the center console in plain view[,]" but he did not testify regarding whether the **content** of these receipts was in plain view or describe how he could determine the incriminating nature of the receipts. (*See* Tr. 15.)

meet its burden of showing that the items seized had an incriminating nature apparent in plain view.[12]

Second, it is unclear which areas of Caskey's vehicle Officer Bobo searched. *See Best*, 135 F.3d at 1225 (holding that an inventory policy could allow for the opening of any opaque containers but could not allow looking inside door panels). The United States had the burden to show that Officer Bobo followed standard police procedures and reasonably exercised his discretion in choosing which places to search during the inventory search. *See id.*; *Hall*, 497 F.3d at 851. NBPD policy allows a search of all areas where "personal property or hazardous materials may reasonably be found, including but not limited to the passenger compartment, trunk and glove compartment." (United States Ex. 1 at 1.)[13] This policy thus leaves discretion to the officer to interpret areas where "personal property or hazardous materials may reasonably be found."[14] Although Officer Bobo testified that he complied with the policy, he never stated how he interpreted this directive or where he, in fact, searched in Caskey's truck. *See Kennedy*,

---

[12] It is also unclear if Officer Bobo complied with the procedures for control of criminal evidence, which is a requirement of the inventory search policy, because these procedures have not been provided to the Court. (*See* United States Ex. 1 at 2, 5.)

[13] The Court will assume without deciding that this policy is sufficiently definite.

[14] Although not critical to the Court's decision, the Court is also troubled by the lack of evidence about the toolbox found in Caskey's truck. It is possible that Officer Bobo seized this toolbox from the truck, raising questions as to why he did not log it on either form. Furthermore, it is possible that this toolbox would qualify as an "item of value," raising questions about Officer Bobo's interpretation of this term, particularly because neither the inventory search policy nor Officer Bobo provided any definition of this term.

427 F.3d at 1144-45 (suppressing evidence whether the United States established that procedures were in place but failed to establish compliance with those procedures). Accordingly, the United States did not establish that Officer Bobo reasonably complied with the policy's dictates about the areas to be searched. *See Best*, 135 F.3d at 1225.

In sum, the United States asks the Court to draw too many assumptions on its behalf. It asks the Court to assume that Officer Bobo searched only appropriate areas in the vehicle and seized certain items, such as the black bag and straws, from proper areas in the vehicle. It asks the Court to assume that items such as the cups and straws were in plain view without evidence as to where they were found. It asks the Court to assume that items such as receipts had an apparent incriminating nature, without any information about the dates or contents of the receipts or any argument, much less testimony, about their incriminating nature or how that incriminating nature was apparent. The Court is not permitted to assume that the United States could meet its burden of showing compliance with inventory search procedures; rather, the United States must present evidence that meets its burden. *See Kennedy*, 427 F.3d at 1144.

Because the United States has not met its burden to show that Officer Bobo complied with the NBPD inventory search policy, the Court must consider whether there is evidence of an investigatory motive that renders suppression appropriate. *See Rowland*, 341 F.3d at 780; *United States v. Taylor*, 636 F.3d 461, 465 (8th Cir. 2011) (suppressing evidence where officer did not create a detailed inventory of the items found in the vehicle, where there was also evidence of investigatory intent). Here, the Court finds that there is such evidence. Although Officer Bobo offered some conflicting

testimony on this point, he admitted that his focus in searching Caskey's vehicle was, in large part, to find items that police could use in their investigation. The items logged and seized by Officer Bobo, such as fingerprint and hair samples, also demonstrate an investigatory intent. The Court thus finds that there is proof of an investigatory motive, combined with a failure to show compliance with standard police procedures. Therefore, suppression is appropriate. *See Rowland*, 341 F.3d at 780.

## II. ABANDONMENT

The United States has raised a new argument, for the first time on its motion for reconsideration, that the search of Caskey's truck was proper because Caskey had abandoned his truck. The Court will not consider this argument because the United States waived it.

The Eighth Circuit has held, in no uncertain terms, that a party is "required to present all of his arguments to the magistrate judge, lest they be waived." *Ridenour v. Boehringer Ingelheim Pharm., Inc.*, 679 F.3d 1062, 1067 (8th Cir. 2012). In *Ridenour*, the Court stated that "the purpose of referring cases to a magistrate for recommended disposition would be contravened if parties were allowed to present only selected issues to the magistrate, reserving their full panoply of contentions for the trial court." *Id.* (internal quotation marks omitted). Accordingly, it held that a district court conducting a *de novo* review of magistrate judge recommendation properly refused to consider arguments not raised before the magistrate judge. *Id.*

The United States suggests that *Ridenour* does not apply to suppression motions. Specifically, it suggests that suppression motions warrant "special consideration," causing the court to be "constitutionally and statutorily required" to address arguments not raised to the magistrate judge. However, the United States has not defined these alleged "special considerations." In *Ridenour*, the court granted the defendant pharmaceutical company's motion for summary judgment motion in a civil action that alleged claims including breach of express and implied warranties, negligence, and negligence *per se*. *Ridenour*, 679 F.3d at 1063. Although *Ridenour* was a civil rather than a criminal case, it appears that the defendant had both the statutory right to *de novo* review of the motion, *see* 28 U.S.C. § 636(b)(1), as well as the constitutional right to have the motion decided by an Article III judge.[15] Thus, the relevant statutory and constitutional considerations in *Ridenour* appear to be the same as those in the instant case, making *Ridenour* applicable.

The United States cites two cases which it claims shows that that suppression motions warrant "special consideration": *United States v. George*, 971 F.2d 1113, 1118 n.6 (4th Cir. 1992) and *United States v. Soderholm*, 4:11CR3050, 2011 WL 5444053, at *5-6 (D. Neb. Nov. 9, 2011). These cases do not stand for this proposition, however. *George* was not decided on the basis of the unique nature of suppression motions but

---

[15] *See Reiter v. Honeywell, Inc.*, 104 F.3d 1071, 1073-74 (8th Cir. 1997) (holding that party possessed right to have civil employment discrimination case tried before an Article III judge); *Pacemaker Diagnostic Clinic of Am., Inc. v. Instromedix, Inc.*, 725 F.2d 537, 541 (9th Cir. 1984) ("[T]he federal litigant has a personal right, subject to exceptions in certain classes of cases, to demand Article III adjudication of a civil suit.").

because the Fourth Circuit disagrees with the Eighth Circuit's position that a party waives arguments not presented to the magistrate judge when a district court conducts a *de novo* review of a motion. *See George*, 971 F.2d at 1118 ("We believe that as part of its obligation to determine *de novo* any issue to which proper objection is made, a district court is required to consider all arguments directed to that issue, **regardless of whether they were raised before the magistrate**.") (emphasis added); *The Glidden Co. v. Kinsella*, 386 Fed. Appx. 535, 544 n.2 (6th Cir. 2010) (describing circuit split). In addition, *Soderholm* did not hold that a party could raise arguments regarding suppression motions not raised to a magistrate judge; rather, the decision suggested otherwise and then did not decide the issue. *See Soderholm*, 2011 WL 5444053, at *5-6. Accordingly, the United States has provided no support for the argument that the Eighth Circuit's general rule, as outlined in *Ridenour*, is inapplicable in this case.

Further, even if the Court had discretion to consider the United States's abandonment argument, it would not do so because allowing United States to raise the argument at this stage would prejudice Caskey. Caskey was not on notice that the abandonment of the truck was at issue during the evidentiary hearing, and thus he had no incentive to offer evidence or to cross examine witnesses on this exception to the warrant requirement. This is unlike the inventory search exception which, as described above, was at issue at the evidentiary hearing. Furthermore, the Court has taken into account that the United States has offered no justification for its delay in raising this argument. *See, e.g.*, *United States v. Salgado-Campos*, 442 F.3d 684, 686 (8th Cir. 2006) (holding that court was within its discretion in denying a defendant's request for extension of time

to file pretrial motions, where there was no good cause justifying the delay). It would be unfair if defendants were required to timely file suppression motions, unless there was good cause for the delay, while the United States was allowed to raise new defenses in response to those motions long after the evidentiary hearing and recommendations on such motions, without good cause and in the face of prejudice to the defendant. Allowing the United States to raise an argument about abandonment is particularly inappropriate here, where the argument was not raised until a motion for reconsideration. Thus, the Court will not consider the United States's argument that Caskey's truck was properly searched because it was abandoned.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that the United States's Motion for Reconsideration [Docket No. 77] is **DENIED**.

DATED: January 3, 2013　　　　　　　　　　_____s/ John R. Tunheim_____
at Minneapolis, Minnesota.　　　　　　　　　　JOHN R. TUNHEIM
　　　　　　　　　　　　　　　　　　　　　United States District Judge