UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 11-301 (JRT/LIB) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND RULING ON DISPUTED SENTENCING ISSUES** |
| TIMOTHY GLEN CASKEY, | |
| Defendant. | |

Michelle E. Jones and Nathan P. Petterson, Assistant United States Attorneys, **UNITED STATES ATTORNEY'S OFFICE**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for plaintiff.

Carolina A. Lamas, **NEIGHBORHOOD JUSTICE CENTER**, 500 Laurel Avenue, St. Paul, MN 55102; Caroline Durham, 413 Wacouta Street, Suite 430, St. Paul, MN 55101; and John C. Conrad, **LAW OFFICES OF JOHN C. CONRAD**, 7582 Currell Boulevard, Suite 212, Woodbury, MN 55125, for defendant.

This matter came before the Court on an evidentiary hearing related to certain sentencing enhancements sought to be applied by the United States to Defendant Timothy Glen Caskey's conviction for kidnapping and bank robbery. Based on the evidence presented at the hearing, the Court concludes that the United States has demonstrated by a preponderance of the evidence that Caskey used a dangerous weapon during the commission of the kidnapping, held the victim for more than seven days, and sexually exploited the victim. Accordingly, the Court will apply the three sentencing

enhancements in calculating Caskey's sentencing range under the United States Sentencing Guidelines.

## BACKGROUND

On September 21, 2011, Caskey was charged with kidnapping in violation of 18 U.S.C. § 1201(a) and interstate domestic violence in violation of 18 U.S.C. § 2261(a)(2), (b)(3) and (b)(4). (Indictment, Sept. 21, 2011, Docket No. 12.)[1] Caskey was also charged with bank robbery in violation of 18 U.S.C. § 2113(a) in the District of Kansas. The bank robbery prosecution was transferred to this District on February 6, 2014. (Criminal Case No. 14-36, Consent to Transfer, Feb. 6, 2014, Docket No. 1; Criminal Case No. 14-36, Indictment, Feb. 6, 2014, Docket No. 2.)

Caskey pled guilty to kidnapping and bank robbery on February 6, 2014. (Minute Entry, Feb. 6, 2014, Docket No. 119.) Thereafter the United States Probation Office prepared a Presentence Investigation Report ("PSR"). The PSR calculated Caskey's base offense level under the Guidelines as 32. (PSR ¶ 19.) The PSR also recommended a two-level increase for use of a dangerous weapon under U.S.S.G. § 2A4.1(b)(3); a one-level increase because the victim was not released for a period of more than seven days, but less than thirty days under U.S.S.G. § 2A4.1(b)(4); and a six-level increase because the victim was sexually exploited under U.S.S.G. § 2A4.1(b)(5). (PSR ¶¶ 20-22.) The PSR also recommended a three-level downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and (b), yielding an adjusted offense level of 38.

---

[1] Unless otherwise noted docket references refer to Criminal Case No. 11-301.

(PSR ¶¶ 39-41.) The PSR also calculated Caskey's criminal history as a category VI, which resulted in a recommended Guidelines range of 360 months to life imprisonment.

Caskey objected to the two-level enhancement for use of a dangerous weapon, the one-level enhancement for holding the victim for a period of more than seven days, and the six-level enhancement for sexual exploitation of the victim. The Court held an evidentiary hearing on these objections on June 27, 2014. (Minute Entry, June 27, 2014, Docket No. 143.) At the hearing, the United States presented testimony from the victim of Caskey's kidnapping crime – R.L.C.

**ANALYSIS**

**I.     EVIDENTIARY STANDARD**

At sentencing, the government bears the burden of proving "the facts necessary to establish a sentencing enhancement." *United States v. Brooks*, 648 F.3d 626, 629 (8th Cir. 2011) (internal quotation marks omitted). This burden is satisfied if the government demonstrates "by a preponderance of the evidence" the facts supporting a sentencing enhancement. *Id.* (internal quotation marks omitted); *see also United States v. Villareal-Amarillas*, 562 F.3d 892, 895 (8th Cir. 2009).[2]

---

[2] Caskey argues that where, as here, "the disputed facts would result in **an extremely disproportionate outcome**" in sentencing "a heightened standard of clear and convincing evidence can be required as a matter of due process." (Def.'s Mem. in Opp'n to Sentencing Enhancements at 2, July 28, 2014, Docket No. 146 (emphasis in original).) As support Caskey cites to *United States v. Garth*, 540 F.3d 766 (8th Cir. 2008), which stated that "in cases where the effect of a sentencing factor on the ultimate sentence may have been extreme, the standard that due process requires would be clear and convincing evidence." *Id.* at 773. But *Garth* was expressly abrogated by the Eighth Circuit in *United States v. Villareal-Amarillas*, 562 F.3d 892

(Footnote continued on next page.)

## II. USE OF A DANGEROUS WEAPON

Under the Guidelines, a two-level enhancement applies if a dangerous weapon was used during commission of a kidnapping offense. U.S.S.G. § 2A4.1(b)(3). A dangerous weapon means "an instrument capable of inflicting death or serious bodily injury." U.S.S.G. § 1B1.1, comment 1(D). To use a weapon in the context of this Guidelines provision "means to do more than possess, brandish, or display it." *United States v. Coyle*, 309 F.3d 1071, 1075 (8th Cir. 2002).

At the evidentiary hearing R.L.C. testified that Caskey forced her into his truck in Virginia, Minnesota, and shortly thereafter started "beating" her with a screwdriver. (Evidentiary Hearing Tr. ("Tr.") 8-9.) R.L.C. testified that Caskey hit her on her left arm and leg with the handle of the screwdriver "[m]any, many, many times." (Tr. 9-11.) While Caskey was hitting her, R.L.C. explained that she was "[s]creaming and crying and telling him to stop." (Tr. 10.) R.L.C. testified that she developed bruises on her left side that lasted for approximately three weeks as a result of the beating. (Tr. 11-12.) On cross-examination, defense counsel confrontated R.L.C. with the fact that no screwdriver had ever been recovered from Caskey's truck according to the New Braunfels Police

_____
(Footnote continued.)

(8th Cir. 2009). Caskey tries to distinguish *Villareal-Amarillas* on its facts – that the sentencing factor in that case was not extreme. *Villareal-Amarillas*' holding is not, however, so limited. The court explained that although *Garth* and other cases had stated the clear and convincing evidence exception "[w]e have never applied this exception," and concluded that "it is time to end the dance." *Id.* at 896. The court specifically held that, in part because the Guidelines are now advisory, "due process **never** requires applying a clear and convincing evidence standard to judicial fact-finding at criminal sentencing." *Id.* at 897 (emphasis added). Accordingly, the Court applies the preponderance of the evidence standard here.

Department report and inventory. (Tr. 64.) Defense counsel asked, "[y]ou would agree that no one ever found that screwdriver there, either?" to which R.L.C. responded "[t]here was a screwdriver, and I was beat up with a screwdriver, so I don't know what he did with it." (Tr. 64.) R.L.C. testified that she did not see Caskey dispose of the screwdriver but reiterated "I was beat with one." (Tr. 65.) During the series of events that followed the initial kidnapping, R.L.C. testified that she wore long-sleeve shirts to cover the bruises, which is supported by the surveillance footage produced by defendant. (Tr. 62; Def.'s Ex. 7.)

The Court concludes that this testimony is sufficient to demonstrate, by a preponderance of the evidence, that Caskey used a screwdriver during the commission of the offense. Specifically, use of the screwdriver to beat R.L.C. after Caskey initially forced her into his truck, is sufficient to bring the use of the weapon into the scope of the Guidelines provision. *See Coyle*, 309 F.3d at 1075 (concluding that the dangerous weapon enhancement was warranted where defendant entered victim's car, held a knife to her leg and told her "don't say anything, just drive" (internal quotation marks omitted)). Although the screwdriver was not documented in the later inventory of Caskey's pickup, the Court finds that this is not dispositive of the issue, as numerous events transpired between the initial kidnapping and when Caskey and R.L.C. were taken in by law enforcement in Mexico twenty-six days later. R.L.C. described the beating in detail, and, contrary to defense counsel's position at the hearing, video surveillance does not demonstrate that R.L.C. had not suffered bruises, as she was wearing clothes that prevent making that determination. The Court concludes that R.L.C.'s testimony on this

matter is generally credible, and will therefore overrule Caskey's objection to this two-level enhancement.

### III.   LENGTH OF DETENTION

Under U.S.S.G. § 2A4.1 a one-level enhancement is applicable "[i]f the victim was not released before seven days had elapsed." U.S.S.G. § 2A4.1(b)(4)(B).  Caskey's theory at the evidentiary hearing was that he initially took R.L.C. across state lines against her will, but that at some point within the first several days, R.L.C. traveled with Caskey to Mexico and stayed there with him voluntarily.  The Court concludes, however, that the United States presented sufficient evidence to demonstrate by a preponderance of the evidence that R.L.C. was held against her will for more than seven days.

R.L.C. testified, and Caskey pled guilty, to taking R.L.C. out of Minnesota against her will.  R.L.C. specifically and repeatedly testified that she did not, at any point in the twenty-six days between July 14, 2011 and August 8, 2011 agree to or voluntarily stay with Caskey.  (Tr. 29, 35, 82.)  R.L.C. testified that while she was walking down the street in Virginia, Minnesota, Caskey drove up in his truck, "jumped out of the driver's side and grabbed me and shoved me in the truck." (Tr. 8.)  R.L.C. then testified about the beating with the screwdriver described above.  (Tr. 8-11.)  R.L.C. also described how Caskey beat her in a hotel room, and tied her up in the vehicle while he entered a bank in Kansas.  (Tr. 15, 20-21.)  During this period of time, R.L.C. testified that Caskey would not allow her to contact her children.  (Tr. 22.)  Furthermore, once they arrived in Mexico, R.L.C. testified that Caskey monitored her movements, even requiring her to

keep the door open when she used the bathroom.  (Tr. 24-25.)  R.L.C. also testified that she does not speak Spanish and that when they were in Mexico Caskey told her that he "could beat the shit out of me and the Mexicans wouldn't give a fuck."  (Tr. 24, 26.)  Caskey also told R.L.C. that she could be sent to jail in Mexico because she did not have any identification.  (Tr. 27.)

At the hearing defense counsel highlighted that Caskey purchased clothing and personal toiletry items for R.L.C. and that Caskey made stops at a gas station, a car dealership, and other locations where R.L.C. could have escaped or asked for help.  (*See, e.g.* Tr. 54-59.)  However, the Court finds that this behavior – in failing to attempt to escape – is not inconsistent with R.L.C.'s testimony, especially in light of the testimony regarding the physical abuse R.L.C. suffered and the threats made by Caskey.  *See United States v. Sickinger*, 179 F.3d 1091, 1093 (8th Cir. 1999) ("Sickinger claims that Walker was constructively released prior to 24 hours because Walker was left alone at a convenience store on two occasions and could have escaped.  In the circumstances here . . . . [t]he district court could reasonably have determined that in light of the extraordinarily severe nature of Sickinger's abusive behavior towards Walker . . . Walker was not in a position – physically, mentally or emotionally – to flee.  Although Sickinger's control had slackened, he did not release or abandon his prisoner.").  Additionally, the Court finds R.L.C.'s testimony about her circumstances in Mexico – being without identification – to be circumstances that would realistically deter her from attempting to escape.

Defense counsel also presented photographs from the bank to demonstrate that the shoelaces Caskey allegedly used to tie up R.L.C. in the truck when he entered the bank, were actually still in his boots.  (Tr. 45-46, 48, Ex. 3.)  When asked about the photographs R.L.C. initially testified that she could not tell whether the laces were still in his boots, but later testified that it looked like Caskey's boots were laced up.  (Tr. 48, 50.) R.L.C. then clarified that she was not sure where the laces had come from.  (Tr. 50.)

The Court acknowledges that R.L.C. was not a particularly strong witness, particularly because her memory of certain potentially relevant events was quite poor, while her memory of other related events that were close in time and space was quite clear.  Additionally, there were some inconsistencies between the testimony provided by R.L.C. to law enforcement officers and the testimony provided at the evidentiary hearing. Viewing the record as a whole, however, the Court concludes that the government satisfied its burden of proving that R.L.C. was held, against her will for at least seven days, and will thus apply the one-level enhancement.

## IV.   SEXUAL EXPLOITATION

Caskey also objects to the six-level enhancement for sexual exploitation of the victim, pursuant to U.S.S.G. § 2A4.1(b)(5).  Sexual exploitation is defined in the Guidelines as including causing another person to engage in a sexual act by placing the other person in fear that another person will be subjected to death, serious bodily injury or kidnapping or otherwise placing the other person in fear.  *Id.*, comment 3 (citing 18 U.S.C. §§ 2241-2244.)

At the hearing, R.L.C. testified that after Caskey forced her in to his truck and beat her with the screwdriver he pulled over on the side of the road and had sexual intercourse with her, even after she repeatedly asked him to stop. (Tr. 13.) During the period of time she was held R.L.C. testified that she engaged in sexual activity with Caskey because she "just did what I had to do to not get hurt." (Tr. 25.) The Court finds, based on R.L.C.'s testimony, sufficient evidence that R.L.C. was afraid of Caskey and what he might do to her, and therefore engaged in sexual activities. Accordingly, the Court concludes that the government has met its evidentiary burden, and will apply the six-level enhancement.

## ORDER

Based on the record established at the evidentiary hearing, and all the files, records, and proceedings herein, the Court **OVERRULES** Defendant's objections to the PSR. At sentencing, the Court will apply a two-level enhancement for use of a dangerous weapon under U.S.S.G. § 2A4.1(b)(3), a one-level enhancement because the victim was not released for a period of more than seven days, but less than thirty days under U.S.S.G. § 2A4.1(b)(4); and a six-level increase because the victim was sexually exploited under U.S.S.G. § 2A4.1(b)(5).

DATED: September 8, 2014  
at Minneapolis, Minnesota.

                                                                                       s/ John R. Tunheim  
                                                                                         JOHN R. TUNHEIM  
                                                                                  United States District Judge